# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **SHANE R. BAGLEY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. CIV 08-217-JHP-SPS |
| ) | |
| **HASKELL HIGGINS,** ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

This action is before the court on the defendants' motions to dismiss or for summary judgment. The court has before it for consideration plaintiff's complaint [Docket #1], the defendants' motions [Docket #64 and #65], and special reports prepared by Lawton Correctional Facility [Docket #63] and the Oklahoma Department of Corrections [Docket #66] at the direction of the court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

Plaintiff, an inmate in the custody of the Department of Corrections (DOC) who is incarcerated at Mack Alford Correctional Center in Stringtown, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983, seeking monetary damages, earned credits, and injunctive relief for alleged constitutional violations during his incarceration at Howard McLeod Correctional Center (HMCC) in Atoka, Oklahoma, and Lawton Correctional Facility (LCF), a GEO Group, Inc., private prison in Lawton, Oklahoma. He alleges he has been subjected to cruel and unusual punishment, retaliation, and multiple sanctions for misconducts.

The defendants are Haskell Higgins, HMCC Warden; Cyndi Hendrix, HMCC Deputy

Warden; Teresa Guest, HMCC Senior Investigator; the Oklahoma Department of Corrections; Michael Jackson, M.D., DOC Health Services Director; Gary Johnson, D.O., DOC Regional Physician; Jimmy Williams, DOC Physician Assistant; John Hodges, HMCC Correctional Officer; Tim Ingram, HMCC Correctional Officer; Lt. Shields, HMCC Correctional Officer; Rick Lawrence, HMCC Unit Manager; Jim Southard, HMCC Correctional Counselor and Disciplinary Hearing Officer; Correctional Officer Maverick, HMCC Security Work Crew Supervisor; Justin Jones, DOC Director; GEO Group, Inc., David Miller, Warden of Lawton Correctional Facility; Rick Underwood, LCF Unit Manager; and Brian Lewis, LCF Case Manager.[1]

Plaintiff admits that when this case was filed, he had another pending civil rights case in this court, No. CIV 07-193-RAW. That lawsuit, which was against HMCC Defendants Higgins, Hendrix, and Guest, concerned those defendants' alleged failure to honor plaintiff's medical restrictions, plaintiff's being required to work on the outside work crew, harassment, access to the law library, and a low evaluation because of his litigation. On August 21, 2008, Case No. CIV-07-193-RAW was dismissed without prejudice for plaintiff's failure to exhaust administrative remedies.

Plaintiff alleges that on or about April 3, 2006, Dr. Washburn, a physician at Jackie Brannon Correctional Center in McAlester, Oklahoma, ordered medical restrictions that he

---

[1] To the extent the defendants are sued in their official capacities as DOC officials, plaintiff's claims are barred by the Eleventh Amendment. It is well settled that a damages suit against a state official in his official capacity is merely another way of pleading an action against the State. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). *See also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1988) (state officials sued in their official capacities are not "persons" for purposes of a § 1983 suit, because the suit is against the official's office and not against the official).

should not work outdoors, in the heat, or around dust, because of his rapid heart rate, asthma, allergies, and low back pain. On April 19, 2007, plaintiff was transferred to HMCC, and the next day he attempted to notify medical services of his restrictions. Instead, Defendant Physician Assistant Williams revoked plaintiff's medical restrictions. Plaintiff then spoke to Defendant Unit Manager Lawrence who informally upheld plaintiff's previous restriction against outside work, and plaintiff was assigned to work as an orderly/janitor. On June 23, 2007, plaintiff was hired as a cook in the HMCC kitchen.

From June 2, 2007, until June 22, 2007, plaintiff submitted several Requests to Staff and grievances seeking to reinstate his previous medical restrictions. Plaintiff's wife also called and wrote about the medical restrictions, but her attempts to communicate about the issue went unanswered. Plaintiff subsequently sent letters of grievance and notices of his intent to file a lawsuit over the matter.

On or about July 5, 2007, plaintiff received an undated monthly job evaluation by Defendant Hodges that rated plaintiff's work performance as poor for June 2007. The evaluation stated plaintiff needed to stay in the work area more. On July 9, 2007, Defendant Guest forced plaintiff to work in the fields in the heat and dust, and plaintiff experienced chest pain and breathing problems. His work supervisors would not allow him to return from the fields and informed him he would need to submit a sick call request. On July 11, 2007, plaintiff received a grievance response from Attorney Ron Anderson for Defendant Jones. Plaintiff's grievance letter to Defendant Dr. Jackson was returned unanswered on July 25, 2007. He mailed his first civil rights complaint through the institutional mail system on August 15, 2007.

On August 16, 2007, plaintiff received a misconduct from Defendants Shields and

3

Ingram for Bartering. He was fired from his kitchen job and found guilty of the offense. The misconduct conviction was affirmed on appeal. On August 3, 5, 12, and 18, 2007, plaintiff submitted multiple Requests to Staff that were returned because of pending litigation.

On September 4, 2007, Defendant Guest ordered plaintiff to work in the fields, but he was sent back inside by Defendant Maverick, who said he did not want anything to do with the lawsuit. When plaintiff returned inside, Guest had another correctional officer write a misconduct for plaintiff's disobedience to Guest's order. Plaintiff was found guilty of the offense, but he did not appeal.

On September 6, 2007, plaintiff received a segregation review signed by Defendants Lawrence and Officer Southard. On September 12, 2007, Guest issued a third misconduct for Disrespecting Staff, alleging plaintiff had made a vulgar statement about the Chief of Security. Plaintiff was convicted of the offense.

On October 9, 2007, plaintiff was transferred from segregation at HMCC to DCCC, where he was placed in segregation almost immediately, because plaintiff's distant relative worked there. Plaintiff remained in segregation until he was transferred to LCF on November 15, 2007.

On or about January 21, 2008, after plaintiff had submitted numerous Requests to Staff to LCF Defendants Lewis, Underwood, and Miller, plaintiff's wife wrote Defendant Miller about plaintiff's earned credit level and his privileges. On or about February 14, 2008, plaintiff's wife received a letter from Defendant Miller assuring her that plaintiff would be reviewed for an earned credit level increase before the end of February 2008. Defendant Lewis, however, allegedly arbitrarily denied plaintiff's review and level increase, because plaintiff had unauthorized pictures on his wall. Plaintiff asserts this action was in retaliation

4

for his having filed a civil rights action and his submission of Requests to Staff and complaints to Defendant Miller.

**Howard McLeod Correctional Center**

The special report concerning HMCC states plaintiff was received at that facility on April 19, 2007. Upon reception, he was being treated for asthma and seasonal allergies, and he also complained of back pain. He was evaluated for his work and housing restrictions, and the only restriction noted was permission to wear sunglasses during sun exposure. He was placed on "unassigned" status, which meant he would perform manual labor on the HMCC Security Work Crew, until he received a formal assignment. He also worked temporarily as a dormitory orderly, and he received one evaluation from Defendant John Hodges for the month of June 2007. Hodges states by affidavit that he did not lower plaintiff's work performance because of plaintiff's lawsuit.

Health Services Administrator Brandi Burchfield states by affidavit that she accurately conveyed plaintiff's HMCC medical restrictions to Unit Manager Rick Lowrance. HMCC Deputy Warden Cyndi Hendrix also states she did not instruct any staff member to violate any of plaintiff's medical restrictions, and she has not retaliated against plaintiff for his lawsuit. Officer Teresa Guest denied retaliating against plaintiff, harassing him, ordering him to perform any work in violation of his medical restrictions, or preventing him from using the facility law library.

Plaintiff was issued three medical restrictions at HMCC, none of which included a restriction for an indoor job. He was allowed to wear sunglasses outdoors, to have one extra roll of toilet tissue each week, and to wear tennis shoes for his kitchen job.

HMCC Warden's Assistant Jerry Johnson states by affidavit that he reviewed the HMCC grievance log, and plaintiff submitted no grievances from April 19, 2007, to October 15, 2007, that concerned the issues in Case No. CIV 07-193-RAW. Mr. Johnson further states plaintiff did not attempt to file a grievance regarding his misconduct reports dated August 16, 2007; September 4, 2007; or September 12, 2007. HMCC Health Services Administrator Brandi Burchfield states by affidavit that plaintiff filed no medical grievances from April 19, 2007, to October 15, 2007, that related to the issues in CIV 07-193-RAW. Lavonna Bartling, DOC Administrative Programs Officer, states in her affidavit that plaintiff never has attempted to submit a grievance appeal to her office. Debbie Morton, Manager of the DOC Administrative Review Unit, states that plaintiff has not submitted any type of grievance correspondence to her office from October 3, 2007, to August 27, 2008. Furthermore, Mike Murray, DOC Medical Services Nurse Manager, states he reviewed the inmate medical grievance log and the inmate grievance files maintained by the Medical Services office, and plaintiff filed no medical grievance appeals between April 19, 2007, and October 4, 2007. On June 26, 2007, plaintiff submitted a letter concerning his medical restrictions, but it was returned unanswered for failure to follow the proper grievance procedures.

**Lawton Correctional Facility**

The special report prepared by the Lawton Correctional Facility states that on January 6, 2008, plaintiff submitted a Request to Staff to Defendant Unit Manager Rick Underwood, asking to discuss his earned credit level. Defendant Underwood answered the request and informed plaintiff that he had been raised to Level 2 in December 2007. On January 7, 2008, Underwood sent plaintiff a memo explaining the level system and how plaintiff's level status

would be reviewed in April 2008. On March 3, 2008, Defendant Warden Miller responded to a letter plaintiff's wife had sent to LCF regarding plaintiff's level. The letter explained that plaintiff did not receive a level increase because he failed a cell inspection by blocking the unit manager's access, but he would be eligible for a level increase in April 2008.

On July 18, 2008, plaintiff sent a letter to the DOC regarding level assignment at LCF, but it was returned with instructions for plaintiff to use the proper grievance procedure. The LCF Grievance/Appeals Coordinator states by affidavit that plaintiff did not file any grievances or grievance appeals concerning the issue of his level review.

**Motions to Dismiss**

The defendants allege plaintiff has failed to exhaust his administrative remedies for any of the claims in this lawsuit. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). In deciding a motion to dismiss based on nonexhaustion, the court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

Both HMCC and LCF follow DOC Policy OP-090124, "Inmate/Offender Grievance Process," for the administrative exhaustion process. An inmate first must attempt to resolve his complaint informally. If that is unsuccessful, he may submit a Request to Staff (RTS). If the complaint still is not resolved, he then may file a grievance. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority or the Chief Medical Officer. The administrative process is exhausted only after all of these steps have been taken.

Plaintiff has failed to respond to the defendants' motions to dismiss, and he also has not responded to the court's order to show cause why the motions should not be granted [Docket #72]. After careful review of the record, the court finds plaintiff has failed to exhaust the administrative remedies for any of his claims, including those that first were presented in Case No. CIV-07-193-RAW and which previously were dismissed without prejudice. Furthermore, the deadlines for pursuing administrative remedies have passed.

**ACCORDINGLY,** the defendants' motions to dismiss [Docket #64 and #65] are GRANTED, and this action is, in all respects, DISMISSED, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted.

**IT IS SO ORDERED** this 22nd day of September 2009.

James H. Payne
United States District Judge
Eastern District of Oklahoma